# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDY GELBUTIS,<br><br>        Plaintiff<br><br>v.<br><br>SHENANDOAH POLICE DEPARTMENT, et al,<br><br>        Defendant | CIVIL ACTION NO. 3:17-CV-1057<br><br>(MUNLEY, J.)<br>(MEHALCHICK, M.J.) |

## REPORT AND RECOMMENDATION

This is a civil rights action, initiated by *pro se* Plaintiff Randy Gelbutis upon the filing of the initial complaint on June 16, 2017. (Doc. 1). Presently before the Court is a motion for summary judgment filed by the remaining Defendant in this matter, Officer John Buchinsky ("Officer Buchinsky"). (Doc. 59). For the reasons contained in this Report and Recommendation, it is recommended that this motion be **GRANTED**.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Randy Gelbutis ("Plaintiff" or "Gelbutis") filed the initial complaint in this matter, along with a motion to proceed *in forma pauperis*,[1] on June 16, 2017.[2] (Doc. 1; Doc. 2). Gelbutis named as Defendants the Shenandoah Police Department, Officer Buchinsky, the

---

[1] The Court granted Plaintiff's motion to proceed *in forma pauperis* on October 16, 2017. (Doc. 13, at ¶ 1).

[2] At the time he filed the original complaint, Gelbutis was incarcerated at the State Correctional Institution at Mahanoy ("SCI-Mahanoy"). (Doc. 1, at 1)

Schuylkill County Department of Adult Probation and Parole, Parole Officer Erica Cola, and Parole Officer Brian Shannon. (Doc. 1, at ¶¶ 3-7). Defendants filed a motion to dismiss for failure to state a claim on December 7, 2017. (Doc. 18). While Defendants' motion to dismiss was still pending, Plaintiff filed an amended complaint. (Doc. 21).

Gelbutis alleges that Officer Buchinsky, an officer with the Shenandoah Police Department, Parole Officer Erica Cola ("Officer Cola"), and Parole Officer Brian Shannon ("Officer Shannon"), came to Gelbutis's home on September 21, 2015. (Doc. 21, at ¶¶ 4; 8). An altercation ensued and resulted in Plaintiff being thrown to the ground and ultimately handcuffed. (Doc. 21, at ¶¶ 13-15; 18). While the altercation was on-going, Officer Buchinsky allegedly pushed Plaintiff from his porch railing "with extreme force" and then stepped on his neck, causing Plaintiff a great deal of pain. (Doc. 21, at ¶¶ 14-17). Gelbutis brought civil rights claims against all Defendants, alleging that their respective applications of force, and subsequent failure to provide him with medical treatment, violated his Eighth Amendment rights. (Doc. 21, at ¶¶ 20-21).

On January 3, 2018, Officer Cola, Officer Shannon, and the Schuylkill County Department of Adult Probation and Parole (collectively, the "Parole Defendants") filed a motion to dismiss the amended complaint. (Doc. 27). On January 16, 2018, the Shenandoah Police Department and Officer Buchinsky (collectively, the "Police Defendants") filed a motion to dismiss Plaintiff's amended complaint in part. (Doc. 31). The Police Defendants sought dismissal of Plaintiff's Eighth Amendment medical care claim but not his excessive force claim asserted against Officer Buchinsky. (Doc. 31, at ¶ 5). On August 6, 2018, the undersigned recommended the motions to dismiss filed by the Parole Defendants and the Police Defendants

be granted on the basis of sovereign immunity and for failure to state a claim. (Doc. 51, at ¶¶ 1-5). The District Court adopted the Report and Recommendation on August 27, 2018. (Doc. 53, at ¶¶ 1-7). The only remaining claim is the excessive force claim brought against Officer Buchinsky. (Doc. 51, at 11).

On January 9, 2019 , Officer Buchinsky filed the instant motion for summary judgment (Doc. 59), together with a statement of facts (Doc. 60) and brief in support (Doc. 61). Officer Buchinsky moves for summary judgment on the bases that no genuine issue of material fact exists that precludes judgment in his favor, and further, that he is entitled to qualified immunity. (Doc. 61, at 16). Gelbutis has not filed a brief in opposition or responsive statement of facts, despite being granted multiple extensions of time to do so. (Doc. 63; Doc. 64; Doc. 65; Doc. 69; Doc. 71). As the time allowed for response under the Local Rules, and as extended by Court Order, has expired, the instant motion for summary judgment is ripe for review.

## II. STATEMENT OF MATERIAL FACTS

The undisputed facts[3] pertinent to Officer Buchinsky's motion for summary judgment are as follows.

---

[3] Pursuant to Local Rule 56.1, a nonmovant should (1) clearly and unequivocally admit or deny whether each fact contained in movant's statement of facts is undisputed and/or material, (2) set forth the basis for any denial if any fact is not admitted in its entirety, and (3) provide a citation to the part of the record that supports any such denial. *Occhipinti v. Bauer*, 3:13-CV-1875, 2016 WL 5844327, at *3 (M.D. Pa. Sept. 30, 2016) (emphasis added); *Park v. Veasie*, No. 3:09–CV–2177, 2011 WL 1831708, at *4 (M.D. Pa. Mar. 11, 2011). Material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement of facts required to be served by the opposing party. Gelbutis has not filed any papers in opposition to Officer Buchinsky's motion for
*(footnote continued on next page)*

A. FACTS REGARDING GELBUTIS'S PAROLE

At the time of the events leading to his claim in this matter, Gelbutis was on state parole stemming from a conviction for Driving Under the Influence. (Doc. 60, at ¶ 4). His conditions of parole included refraining from assaultive behavior and abstaining from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act. (Doc. 60, at ¶ 6). On August 9, 2013, Gelbutis reported to the Schuylkill County Probation and Parole Office ("Probation Office"), at which time he appeared agitated and had "a line of meth" before meeting with Officer Cola. (Doc. 60, at ¶¶ 7-8).

At the Probation Office, Gelbutis yelled at Officer Cola. (Doc. 60, at ¶ 9). Gelbutis also tested positive for methamphetamine. (Doc. 60, at ¶ 10). As per the conditions of his parole, Gelbutis was taken into custody, which he resisted. (Doc. 60, at ¶¶ 6; 9-11).

B. FACTS REGARDING THE EVENTS OF SEPTEMBER 21, 2015

On the day of the incident giving rise to this action, Gelbutis resided at 310 North Jardin Street, Shenandoah, Pennsylvania. (Doc. 60, at ¶1). Officer Buchinsky was employed as a police officer with the Shenandoah Borough Police Department. (Doc. 60, at ¶2). On

---

summary judgment. As such, the Court deems the statement of facts submitted by Officer Buchinsky to be admitted. *See* Local Rule 56.1. Gelbutis's failure to respond to the present motion does not mean that Officer Buchinsky is automatically entitled to summary judgment. *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The above-mentioned local rule must be construed and applied in a manner consistent with Rule 56 of the Federal Rules of Civil Procedure. *See Anchorage Assocs.*, 922 F.2d at 174. Thus, Officer Buchinsky must still establish that, based on the facts set forth in support of its motion, he is entitled to judgment as a matter of law regarding Gelbutis's excessive force claim. *See Anchorage Assocs.*, 922 F.2d at 175–76; *see also Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993).

September 21, 2015, Gelbutis's son called Officer Cola to the North Jardin Street residence, reporting strange behavior by Gelbutis, and asking that he be administered a drug test. (Doc. 60, at ¶¶ 12- 14).

Officer Cola and Officer Shannon went to Gelbutis's residence in response to the call. (Doc. 60, at ¶ 14). Concerned that Gelbutis may be combative and aggressive, as he had been during the August 2013 incident, Officer Cola had Officer Buchinsky meet them at Gelbutis's residence. (Doc. 60, at ¶¶ 9-11; 15-16). When the Officers arrived at his residence, Gelbutis was waiting on the porch by a rocking chair and appeared agitated. (Doc. 60, at ¶¶ 17-18). Officer Cola believed Gelbutis to be under the influence of methamphetamine and ordered Gelbutis to submit to a urine test to screen for drug use. (Doc. 60, at ¶¶ 19-20; 22).

Officer Buchinsky and Officer Shannon ushered Plaintiff into his residence to complete the test. (Doc. 60, at ¶ 21). Gelbutis, Officer Cola, Officer Shannon, and Officer Buchinsky returned to the porch area after Gelbutis completed the test. (Doc. 60, at ¶ 23). Officer Cola determined the urine sample tested positive for methamphetamine, and informed Gelbutis of the same. (Doc. 60, at ¶¶ 26-27). Gelbutis grew agitated, stated the sample was not his, requested another drug test, and then refused to submit another urine sample. (Doc. 60, at ¶¶ 28-29).

Officer Cola then directed Gelbutis to stand up and put his hands behind his back. (Doc. 60, at ¶ 31). Gelbutis stood up, but immediately lunged over his porch railing, grabbing the sample, and splashing it on Officer Cola and Officer Shannon. (Doc. 60, at ¶¶ 32-35). Officer Cola and Officer Buchinsky continued to struggle with Gelbutis, and Gelbutis pushed Officer Cola, causing her to fall face first into a rocking chair. (Doc. 60, at ¶¶ 36-37). While Officer

Buchinsky and Gelbutis continued to grapple with each other, and Gelbutis fell over his porch railing. (Doc. 60, at ¶¶ 38-39).

After falling, Gelbutis started walking away from the residence, and he threw the empty urine sample into the street. (Doc. 60, at ¶¶ 40-41). Neither Officer Cola nor Officer Shannon observed any physical contact between Officer Buchinsky and Gelbutis after Gelbutis fell over his porch railing. (Doc. 60, at ¶ 49). Officer Shannon pursued Gelbutis to the ground, at which point the officers ordered Gelbutis to stop resisting and put his hands behind his back. (Doc. 60, at ¶¶ 42-43). Gelbutis did not comply with these commands and kept his arms underneath his body. (Doc. 60, at ¶ 44). According to Gelbutis's sworn testimony, his arms were in front of him at this point and Officer Buchinsky came up and was standing on Gelbutis's neck and he couldn't move. (Doc. 60-2, at 13). Officer Cola warned Gelbutis that he would be tasered if he did not submit to arrest, at which point Gelbutis complied and was handcuffed. (Doc. 60, at ¶¶ 45-48).

Officer Cola and Officer Shannon transported Gelbutis to the Probation Office. (Doc. 60, at ¶ 52). Officer Buchinsky had no further involvement with Gelbutis after his transport to the Probation Office (Doc. 60, at ¶ 53).

On September 30, 2015, Officer Buchinsky charged Gelbutis with (1) Aggravated Harassment by Prisoner; (2) Resisting Arrest; (3) Tampering With/Fabricating Physical Evidence; (4) Obstruction of Justice; and (5) Disorderly Conduct Engaging in Fighting. (Doc. 60, at ¶ 58). On October 17, 2016 Gelbutis entered a nolo contendere plea to the charges of: (1) Resisting Arrest, (2) Tampering With/Fabricating Physical Evidence, (3) Obstruction of

Justice, (4) Disorderly Conduct Engaging in Fighting, and (5) Simple Assault. (Doc. 60, at ¶ 59).

### C. FACTS REGARDING GELBUTIS'S METHAMPHETAMINE AND MEDICATION USE, AND ITS IMPACT ON HIS MEMORY OF THE SEPTEMBER 21, 2015 INCIDENT

In a September 25, 2015 conversation with Officer Cola, Gelbutis stated that he used a "line of meth" on September 19, 2015. (Doc. 60, at ¶ 60). At a parole hearing on November 19, 2015, Gelbutis again admitted to using methamphetamines on September 19, 2015. (Doc. 60, at ¶ 61). In his December 6, 2018 deposition, Gelbutis testified that he believed he "did… a line of meth" on September 19, 2015, and that this probably caused his positive urine sample. (Doc. 60, at ¶¶ 65-66). Gelbutis testified that he was paranoid on September 21, 2015, a state which may cause him to not understand what is going on around him. (Doc. 60, at ¶ 68).

Gelbutis also stated in his deposition that using methamphetamines sometimes causes gaps in his memory, and that there could have been gaps in his memory about the September 21, 2015, incident. (Doc. 60, at ¶¶ 63-64). Gelbutis also testified that he took a "double dose" of his prescribed medications—Celexa for depression and Risperdal for psychotic and delusional behavior— on September 21, 2015, which may have further impaired his memory that day. (Doc. 60, at ¶¶ 71-73).

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of

material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The Third Circuit emphasized that, "although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[4] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL

---

[4] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs on summary judgment is
*(footnote continued on next page)*

3896192, at *7 (M.D. Pa. Aug. 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (non-precedential). The opposing party "'cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument.'" *Velentzas*, 2010 WL 3896192, at *7 (quoting *Goode,* 241 F. App'x at 868). "Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56).

B. CLAIMS BROUGHT UNDER 42 U.S.C. § 1983

Plaintiff's operative complaint asserts federal civil rights claim pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To state a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law,

---

to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

C. <u>EXCESSIVE FORCE CLAIM</u>

Officer Buchinsky moves for summary judgment on Gelbutis's excessive force claim, asserting that there is no genuine issue of material fact that his use of force was reasonable. The Fourth Amendment protects "[t]he right of the people to be secure in their persons… against unreasonable… seizures." (U.S. Const. amend. IV).[5] "A police officer's 'use of force contravenes the Fourth Amendment if it is excessive under objective standards of reasonableness.'" *Brogan v. Tunkhannock Twp.*, 302 F. Supp. 3d 670, 676 (M.D. Pa. 2018)

---

[5] Gelbutis brings his excessive force claim pursuant to the Eighth Amendment. (Doc. 21). "While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hospital*, 463 U.S. 239, 244 (1983)); *see also Whitley v. Albers,* 475 U.S. 312, 318–326 (1986) (finding that a claim of excessive force to subdue convicted prisoner is properly analyzed under the Eighth Amendment). Conversely, when an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . " *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Tennessee v. Garner,* 471 U.S. 1, 7–22 (1985) (finding that a claim of excessive force to effect arrest is analyzed under the Fourth Amendment). Generally, excessive force claims brought under the Fourth Amendment are not barred by the favorable termination rule articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994); *see Nelson v. Jashurek,* 109 F.3d 142, 145-46 (3d Cir. 1997). Gelbutis's excessive force claim is thus properly analyzed under the Fourth Amendment standard. *See Nelson,* 109 F.3d at 145 (holding that an excessive force claim stemming from the arrest of a parole violated arose under the Fourth Amendment and was not affected by the plaintiff's parole status); *see also Anderson v. Dauphin Cty. Adult Prob. Office*, No. 1:15-CV-00878, 2016 WL 769278, at *3 (M.D. Pa. Jan. 25, 2016), *report and recommendation adopted*, No. 1:15-CV-878, 2016 WL 759162 (M.D. Pa. Feb. 26, 2016) (liberally construing *pro se* plaintiff's Eighth Amendment excessive force claim as a Fourth Amendment excessive force claim).

10

(quoting *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002)). "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Fulks ex rel. Daniel v. Gasper*, 439 F. Supp. 2d 372, 376 (M.D. Pa. July 13, 2006) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). Further, reasonableness must be evaluated from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Brogan*, 302 F. Supp. 3d at 676 (quoting *Graham*, 490 U.S. at 396).

If the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances, then summary judgment in the officer's favor may be warranted. *See Gasper,* 439 F. Supp. 2d at 377 (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)). The court must consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he actively was resisting arrest or attempting to evade arrest by flight. *Ball v. Twp. of Silver Spring*, 833 F. Supp. 2d 415, 420 (M.D. Pa. 2011) (quoting *Kopec v. Tate,* 361 F.3d 772, 776–77 (3d Cir. 2004)); s*ee also Brown v. Culp*, No. 1:11–CV–1734, 2013 WL 4041571, at *8 (M.D. Pa. Aug. 8, 2013) (quoting *Graham*, 490 U.S. at 390). Additionally, courts may consider the possibility that the persons subject to the police action are violent or dangerous or possibly armed, whether the action takes place within the context of effecting an arrest, the number of people who police must contend with at one time, and the duration of the action. *Ball,* 833 F. Supp. 2d at 420; *Kopec,* 361 F.3d at 776–77). The determination of reasonableness allows for the fact that police officers are often forced to make split-second judgments – in circumstances that

are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Brogan*, 302 F. Supp. 3d at 676 (quoting *Graham*, 490 U.S. at 396-97).

Finally, the Court must view the totality of the circumstances surrounding the September 21, 2015 incident in the light most favorable to Gelbutis, the non-movant. *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994); *Gasper*, 439 F. Supp. 2d at 376. Gelbutis complains of two occasions where Officer Buchinsky applied force to him – when Officer Buchinsky allegedly pushed him off his porch (Doc. 21, at ¶ 14), and when Officer Buchinsky allegedly stepped on his neck. (Doc. 21, at ¶¶ 16-17).

### 1. Porch Fall

The undisputed record establishes that Officer Buchinsky arrived at Gelbutis's residence at the request of Officer Cola, because Officer Cola suspected Gelbutis might be combative and aggressive. (Doc. 60, at ¶¶ 9-11; 15-16). Officer Cola suspected this because Gelbutis's son had called the police, reported that Gelbutis was acting strange, and asked them to conduct a drug test. (Doc. 60, at ¶¶ 12-13). Officer Cola's recollection of the August 2013 altercation with Gelbutis at the Probation Office also served to increase her suspicion. (Doc. 60, at ¶¶ 7-8). During that August 2013 altercation, Gelbutis tested positive for methamphetamine, yelled at Officer Cola, and resisted being taken into custody. (Doc. 60, at ¶¶ 9-11).

When Officer Buchinsky and Officer Cola arrived at Gelbutis's residence on September 21, 2015, Gelbutis was waiting on the porch beside a rocking chair and appeared agitated. (Doc. 60, at ¶¶ 17-18). Officer Cola believed Gelbutis to be under the influence of methamphetamine. (Doc. 60, at ¶¶ 19-20; 22). During the encounter, Gelbutis tested positive for methamphetamine and Officer Cola attempted to secure Gelbutis, instructing him to stand

up and put his hands behind his back.[6] (Doc. 60, at ¶¶ 26; 31). Gelbutis instead lunged toward the urine sample, ultimately splashing the bodily fluid on the officers while attempting to destroy the sample, and then pushed Officer Cola into a rocking chair face first. (Doc. 61, at 17). Gelbutis fell over his porch railing, but was unable to testify who purportedly pushed him over the railing. (Doc. 60, at ¶¶ 38-39).

The undisputed facts in the record establish that Gelbutis actively resisted arrest and refused to comply with the officers' commands. Further, the undisputed record establishes that Gelbutis became increasingly agitated, exposed the officers to his bodily fluids, and pushed Officer Cola into a rocking chair, demonstrating a threat to officer safety. Moreover, the altercation occurred in the context of effecting an arrest. Even viewing these facts in a light most favorable to Gelbutis as the non-movant, and even assuming it was Officer Buchinsky who pushed him, there is no dispute of material fact regarding the reasonableness of the force employed by Officer Buchinsky under the circumstances at the time that Gelbutis fell off the porch. *See Brown*, 2013 WL 4041571, at *8 (quoting *Graham*, 490 U.S. at 390); *Ball*, 833 F. Supp. 2d at 420 (quoting *Kopec,* 361 F.3d at 776–77); *Brogan,* 302 F. Supp. 3d at 676.

---

[6] Per the conditions of Gelbutis's parole, his use of a controlled substance within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act would result in a detention in a county prison. (Doc. 60-3, at ¶ 7; 5). Methamphetamine is a prohibited substance under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act. 35 P.S. § 780-104(1); *Com. v. Rodriguez*, 548 A. 2d 1211, 1212 (Pa. 1988). Gelbutis's drug test showed a positive result for methamphetamine, i.e. a prohibited substance. Thus, Gelbutis faced detention in a county prison, which tends to show the severity of his crime. *See Ball,* 833 F. Supp. 2d at 420 (quoting *Kopec,* 361 F.3d at 776–77).

### 2. Neck Restraint

Gelbutis also alleges that Officer Buchinsky employed excessive force when he stepped on his neck. (Doc. 21, at ¶¶ 16-17). In support of his motion for summary judgment on this claim, Officer Buchinsky submits declarations of Officer Cola and Officer Shannon, which state that they did not observe any physical contact between Officer Buchinsky and Gelbutis after his fall. (Doc. 60, at ¶ 49). Officer Buchinsky submits that there is no evidence in the record to support Gelbutis's claim that Officer Buchinsky continued to use unreasonable force against Gelbutis by stepping on his neck. (Doc. 61, at 17-18).

In his declaration, Officer Cola affirms that "at no point during the struggle did Officer Buchinsky place his feet on any part of [Plaintiff's] body," nor did he "have any physical contact with [Plaintiff] after he fell over the railing." (Doc. 60-4, at ¶ 42-43). Officer Shannon provided substantially similar testimony, stating that at no point were Officer Buchinsky's feet in contact with Gelbutis's person. (Doc. 60-7, at ¶ 32). Officer Shannon also declares that there was no contact between Officer Buchinsky and Gelbutis after he fell over the railing. (Doc. 60-7, at ¶ 33). However, in his December 6, 2018 deposition, Gelbutis testified that Officer Buchinsky stood on his neck, after Officer Cola had already pinned him to the ground, thereby causing Gelbutis to scream in pain. (Doc. 60-2, at 13 pp. 51). Officer Buchinsky submits that Gelbutis's testimony does not create a genuine dispute of material fact, as his recollection of the events of September 21, 2015 is "so inconsistent as to be wholly unreliable." (Doc. 61, at 8; 17-18). Officer Buchinsky further submits that, even if he had placed his foot on Gelbutis's neck, he is still entitled to summary judgment. (Doc. 61, at 19).

Gelbutis's deposition testimony indicates that he was pinned to the ground when Officer Buchinsky stepped on his neck, and that his arms were out in front of him, and that he was unable to move. (Doc. 60-2, at 13 pp. 51-52). This is in direct conflict to Defendants' statement that Gelbutis kept his hands and arms underneath his body to prevent the officers from handcuffing him (Doc. 60, at ¶¶ 44-47), and creates a dispute of material fact. *See Ball*, 833 F. Supp. 2d at 420 (citing *Kopec,* 361 F.3d at 776–77).

Further, Officer Buchinsky's challenges to Gelbutis's memory and credibility are factual issues for the jury to decide, rather than the Court on a motion for summary judgment. *See Vega v. Chief Matthew Nestor*, No. 4:06-cv-2287, 2012 WL 13162666, at *3 (M.D. Pa. Feb. 16, 2012) (overruling defendant's objection to denial of summary judgment motion where defendant argued witness's "statements [were] uncorroborated, and thus should be discredited" because "neither the credibility of [witness]'s statement nor the weight that should be accorded thereto, are before this [c]ourt on a motion for summary judgment"). As discussed above, viewing the record in the light most favorable to Gelbutis, a reasonable jury could conclude Officer Buchinsky's stepping on his neck was an excessive use of force, contrary to the Fourth Amendment. As such, the Court recommends denying Officer Buchinsky's motion for summary judgment regarding Gelbutis's excessive force claim arising from Officer Buchinsky stepping on his neck.

D. Qualified Immunity[7]

Finally, Officer Buchinsky raises the affirmative defense of qualified immunity in his motion for summary judgment. Qualified immunity provides not merely a "defense to liability," but rather "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Specifically, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). An official who reasonably believes his conduct to be lawful is thus protected, as qualified immunity provides "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010); *see also Hope v. Pelzer,* 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful" (internal quotation marks omitted)).

The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Further, "lower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *al-Kidd*, 131 S. Ct. at 2080; *see also Pearson*, 555 U.S. at 236 ("[D]istrict courts…should be permitted to exercise their sound discretion in deciding which of

---

[7] As the Court has already found that summary judgment should be entered in favor of Officer Buchinsky on the excessive force claim arising from Gelbutis's fall off the porch, it will only consider whether Officer Buchinsky is entitled to qualified immunity on the excessive form claim arising from Gelbutis's claim of him standing on his neck.

16

the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Here, Officer Buchinsky primarily challenges whether the conduct of which Gelbutis complains violated a clearly established right. (Doc. 61). Further, as discussed *supra*, factual disputes exist that may result in a jury finding that Officer Buchinsky violated Gelbutis's constitutional rights. As such, the Court will consider the second prong of the qualified immunity analysis first. *See al-Kidd*, 131 S. Ct. at 2080.

"A right is 'clearly established' if a reasonable actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates." *Broadwater v. Fow*, 945 F. Supp. 2d 574, 585 (M.D. Pa. 2013). A right may be clearly established without "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083. "In determining whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012); *see* also *al–Kidd*, 131 S.Ct. at 2084 ("We have repeatedly told courts ... not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (citations omitted). As such, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (emphasis in original) (*quoting al–Kidd*, 131 S.Ct. at 2084). The appropriate inquiry is whether the Constitution prohibited the officer's conduct in the situation the officer confronted. *Mullenix*, 136 S.Ct. at 308 (citing *Brosseau*, 543 U.S. at 198, 125 S.Ct. 596). As noted *supra*, it is clear that an officer's use of force is excessive and contravenes the

17

Fourth Amendment when it is objectively unreasonable under the circumstances. *See Graham*, 490 U.S. at 396-97, 109 S.Ct. 1865. It is equally clear that *Graham* and other cases articulating the objective reasonableness standard "do not by themselves create clearly established law outside an 'obvious case.' " *Randolph-Ali v. Minium*, No. 1:16-CV-1625, 2019 WL 1299195, at *5 (M.D. Pa. Mar. 21, 2019) (quoting *Kisela v. Hughes*, 584 U.S. ——, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (*per curiam*)(internal citations omitted)). Specificity is particularly important in the Fourth Amendment context, where "it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts." *Kisela* at 1152-53 (quoting *Mullenix*, 136 S.Ct. at 308). Because that line between acceptable force and excessive force can be difficult to discern, an officer is entitled to qualified immunity absent existing precedent which " 'squarely governs' the specific facts at issue" and adequately notifies the officer that a specific use of force is unlawful. *Kisela*, 138 S.Ct. at 1153 (quoting *Mullenix*, 136 S.Ct. at 309, 312).

Gelbutis, in failing to respond at all to Defendant's motion for summary judgment, has not identified any judicial decision, either precedential or persuasive, which would indicate to law enforcement that Officer Buchinsky's conduct was so egregious as to constitute an obvious case for qualified immunity purposes. Further, Fourth Amendment jurisprudence recognizes that some degree of physical force or coercion may be necessary to effect an arrest. *Randolph-Ali*, 2019 WL 1299195 at *6; *Graham*, 490 U.S. at 396. Physically subduing. A reasonable police officer in the situation confronting Officer Buchinsky would not have believed that attempting to gain Gelbutis's compliance in this manner would violate clearly established law. As such,

Officer Buchinsky is entitled to summary judgment on the Gelbutis's excessive force claim arising out of Officer Buchinsky stepping on his neck.

IV. **CONCLUSION AND RECOMMENDATION**

In sum, it is recommended that the Court **GRANT** Officer Buchinsky's Motion for Summary Judgment (Doc. 59). Specifically, it is recommended that summary judgment be granted on Gelbutis's excessive force claim related to his fall off the porch, as there is not genuine issue of material fact in the record such that a reasonable jury could return a verdict for Gelbutis on this claim. As to Gelbutis's claim of excessive force related to Officer Buchinsky's restraint of him on the ground, it is recommended that the Court find that Officer Buchinsky is entitled to qualified immunity on this claim, and judgment be entered in his favor. Finally, it is recommended that the Clerk of Court be directed to **CLOSE** this case.

**Dated: August 23, 2019**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

RANDY GELBUTIS,

        Plaintiff

v.

SHENANDOAH POLICE DEPARTMENT, et al,

        Defendant

CIVIL ACTION NO. 3:17-CV-1057

(MUNLEY, J.)
(MEHALCHICK, M.J.)

# NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 23, 2019**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: August 23, 2019**

        *s/ Karoline Mehalchick*
        **KAROLINE MEHALCHICK**
        **United States Magistrate Judge**